# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13-04016-CR-C-BP |
| | ) |
| PETR BABENKO, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Defendant Petr Babenko (hereinafter "defendant") filed a motion to dismiss the Indictment and, in the alternative, a request for suppression of the evidence if the Indictment is not dismissed (doc. 63). Defendant has also filed a Motion to Dismiss the Indictment on Grounds of Insufficiency of the Indictment and Breach of Fifth Amendment Rights (doc. 73). The government has filed suggestions in opposition to both motions. A hearing was held on May 22, 2014, during which the Court heard oral argument of counsel related to both motions.[1]

## I. Background

Defendant was indicted on February 26, 2013, along with co-conspirator Bogdan Nahapetyan on charges of Conspiracy to violate the Lacey Act and Lacey Act trafficking. (Doc. 1). The charges arose from the defendants' actions between March 20, 2012, and April 28, 2012, in negotiating for the purchase of, and purchasing, paddlefish, and paddlefish eggs in Benton County, Missouri, knowing the paddlefish and eggs were taken, possessed, transported, and sold in violation of Missouri law.

The American paddlefish, also called the Mississippi paddlefish or the spoonbill, is a freshwater fish that is primarily found in the Mississippi River drainage system. The Lake of the Ozarks is also a body of water where the paddlefish can be found in substantial numbers. Paddlefish eggs are marketed as caviar. Paddlefish were once common in waters throughout the Midwest. However, the global decline in other caviar sources, such as sturgeon, has led to an

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

increased demand for paddlefish caviar. This increased demand has led to over-fishing of paddlefish, and consequent decline of the paddlefish population.

The paddlefish were sold to the defendants by fish and wildlife law enforcement officers acting in an undercover capacity. These sales were made as part of a joint operation by the United States Fish & Wildlife Service (USFWS) and the Missouri Department of Conservation (MDC) to investigate allegations that paddlefish from Benton County were being taken, possessed, transported, and sold in violation of Missouri law. The eggs were subsequently transported in interstate commerce by defendant from Missouri to New Jersey. Defendant alleges, and the government concedes, that some of the paddlefish eggs sold to defendants by the undercover agents were actually legally purchased from a fishery owned and operated by the State of Oklahoma. However, at the time the defendants purchased the eggs from the undercover agents in Missouri, they did not know the eggs had been purchased legally in Oklahoma by the agents for the purpose of aiding them in their undercover operation. Unbeknownst to the defendants, their calls to undercover agents arranging for the purchase of paddlefish, as well as the sales themselves, were captured on audio or video recording.[2]

## II. Legal Analysis

### A. Defendant's Motion to Dismiss Indictment and to Suppress Evidence (Doc. 63)

#### 1. Whether defendant's actions violated Missouri law and the Lacey Act

Defendant initially contends that the Indictment must be dismissed because "the conduct attributed to [him] was not in violation of the take and possession limits of Missouri law and cannot in these respects serve as a basis for a Lacey Act indictment." (Doc. 63, p. 4). Defendant argues that because there was no violation of any Missouri law there cannot be a violation of the Lacey Act.

The Lacey Act makes it unlawful for any person to transport in interstate commerce any fish, or parts thereof, that were taken, possessed, transported, or sold in violation of any state law or regulation. 16 U.S.C. § 3372(a)(2)(A). A violation of this section of the Act is a Class D felony if it involves the sale or purchase, offer to sell or purchase, or intent to sell or purchase fish with a market value in excess of $350. 16 U.S.C. § 3373(d)(1)(B). The Indictment alleges

---

[2] Co-defendant Bogdan Nahapetyan pled guilty before the undersigned on November 12, 2013. On December 4, 2013, the District Court adopted the Report and Recommendation (doc. 54) of the undersigned and accepted defendant Nahapetyan's plea of guilty (doc. 57).

the violation of numerous Missouri regulations, any of which would cause the paddlefish at issue in this case to have been taken, possessed, transported, or sold illegally.

Here, the Indictment charges that the defendants purchased nine paddlefish and eighty pounds of processed paddlefish caviar from undercover agents while in the Western District of Missouri. Missouri law makes it illegal to buy or possess paddlefish or paddlefish eggs "for the purpose of selling, processing, transporting, or shipping" them unless: (1) the fish was taken by a licensed commercial fisherman; and (2) the seller, and in some cases the buyer, has a valid roe fish dealer permit. 3 CSR 10-10.720, 10-10.728[3]. The Indictment charges and the government asserts that the evidence will demonstrate the defendants purchased the paddlefish and paddlefish eggs for the purpose of processing and transporting them to defendant's business in New Jersey. The Indictment charges and the government states that surveillance conducted by undercover agents will show that the defendants processed the eggs and then transported them from Missouri to New Jersey.

The government represents that the paddlefish in this investigation were not taken by licensed Missouri commercial fishermen. Consequently, the paddlefish could not have been legally sold under any circumstances. See 3 CSR 10-10.720, 10-10.728. The government also represents that its evidence will demonstrate that neither the defendants, nor the undercover officers from whom they purchased the fish and eggs, possessed valid roe fish dealer permits. As a result, the sales of paddlefish and paddlefish eggs to defendants violated Missouri law. The sale of fish in violation of state law is a valid predicate offense for a Lacey Act trafficking charge. 16 U.S.C. § 3372(a)(2)(A).

Defendant contends that the Missouri possession limit is irrelevant to this case because the paddlefish at issue came from Oklahoma. (Doc. 63, p. 4). The government admits that undercover MDC and USFWS officers worked cooperatively with the Oklahoma Department of Wildlife Conservation (ODWC) as part of the covert operation. The Indictment charges that defendants purchased nine paddlefish from undercover officers, all of which originated in Missouri. The defendants are also charged with purchasing eighty pounds of processed paddlefish caviar. This caviar originated in Oklahoma. After purchasing the fish, the Indictment alleges the defendants transported them to defendant Nahapetyan's residence where they

---

[3] To be consistent with the parties' briefs, the Court cites to the Missouri Code of State Regulations as "x CSR x-x.x".

processed the eggs. Missouri law provides that no person may possess more than four paddlefish, including parts thereof, at any time. 3 CSR 10-6.405(3)(F), 10-6.525(1). The act of possessing nine whole paddlefish, according to the Indictment constituted a violation of the Missouri possession limit. According to the Indictment, the possession of fish in violation of state law is a valid predicate offense for a Lacey Act trafficking charge. 16 U.S.C. § 3372(a)(2)(A).

Additionally, the Indictment alleges that a second ground for illegal possession exists with regard to the nine paddlefish in that the defendants did not properly label the fish with the name(s) or fishing permit number(s) of the fishermen who caught them in accordance with the requirements of Missouri law. Missouri law specifically states that such labeling is required in order to legally possess paddlefish or paddlefish eggs taken by another person. 3 CSR 10-4.136, 10-4.137. Again, the possession of fish in violation of state law is a valid predicate offense for a Lacey Act trafficking charge. 16 U.S.C. § 3372(a)(2)(A).

The Indictment further charges that defendants purchased eighty pounds of processed paddlefish caviar from undercover officers in the Western District of Missouri. As mentioned previously, this caviar was purchased by law enforcement officials in Oklahoma. After purchasing the processed caviar, the defendants transported it to defendant Nahapetyan's residence where the caviar remained until defendant transported it to New Jersey. Missouri law provides that the possession limit for fish harvested outside of Missouri shall be governed by the laws of the state where the fish is taken. 3 CSR 10-4.150. During the time period charged in the Indictment, Oklahoma, like Missouri, had a possession limit of four paddlefish, including parts thereof. OKLA. ADMIN. CODE § 800:10-1-7(a). According to the government, eighty pounds of processed caviar is substantially more than the amount of caviar that could be produced by four paddlefish. By possessing eighty pounds of processed caviar, the defendants violated the Missouri possession limit. 3 CSR 10-4.150; OKLA. ADMIN. CODE § 800:10-1-7(a). The possession of fish, or fish parts, in violation of state law is a valid predicate offense for a Lacey Act trafficking charge. 16 U.S.C. § 3372(a)(2)(A).

As stated in the Indictment, it was also illegal for defendants to possess the eighty pounds of processed caviar because they did not properly label the caviar with the name(s) or fishing permit number(s) of the fishermen who caught them. Missouri law specifically states that such labeling is required in order to legally possess paddlefish or paddlefish eggs taken by another

person. 3 CSR 10-4.136, 10-4.137. As noted above, the possession of fish in violation of state law is a valid predicate offense for a Lacey Act trafficking charge. 16 U.S.C. § 3372(a)(2)(A).

Finally, the Indictment alleges the defendants' transportation of the caviar from the Truman Dam area to defendant Nahapetyan's residence was also illegal because Missouri law provides that "extracted paddlefish eggs . . . may not be transported." 3 CSR 10-6.525(5). The transportation of fish, or fish parts, in violation of state law is a valid predicate offense for a Lacey Act trafficking charge. 16 U.S.C. § 3372(a)(2)(A).

### 2. Whether factual impossibility is a defense to the crimes charged

Defendant next argues the Indictment is defective and the charges should be dismissed. It is defendant's position that the paddlefish and paddlefish eggs purchased by defendant from the undercover officers were not possessed or taken in violation of Missouri law and that therefore this transaction cannot serve as a basis for a Lacey Act violation. (Doc. 63, p.4-5). The government asserts that defendant is "essentially arguing that the Indictment should be dismissed based on factual impossibility." (Doc. 66, p.6). "Factual impossibility occurs when the objective of the defendant is proscribed by the criminal law but a circumstance unknown to the actor prevents him from bringing about that objective." United States v. Sobrilski, 127 F.3d 669, 674 (8th Cir. 1997) (en banc), quoted in United States v. Joiner, 418 F.3d 863, 869-70 (8th Cir. 2005). The government argues that the defense of factual impossibility is inapplicable in this case. The Court agrees.

It is clear that neither the defendants nor the undercover officers held a valid roe fish dealer permit, which is required by Missouri law, when the sale of the paddlefish and paddlefish eggs occurred. Further, neither party is claiming that there were valid permits as required by 3 CSR 10-10.728. Consequently, the Court agrees with the government's assertion that because of the lack of valid dealer permits, the paddlefish and paddlefish eggs sale was immediately a violation of Missouri law as soon as the transaction occurred. The fact that the contraband was initially purchased legally in the State of Oklahoma to assist the officers in the undercover operation does not negate the subsequent violation of 3 CSR 10-10.728 when the paddlefish and paddlefish eggs were sold without a valid roe fish permit by the seller (undercover agents) and the buyers (defendants). This sale constitutes the first element for a Lacey Act trafficking offense. The second element of the illegal transaction occurred when the defendants transported the illegally purchased paddlefish eggs across state lines from Missouri to New Jersey. The

5

transportation across state lines satisfied the "interstate commerce" requirement for a Lacey Act violation. Finally, the cost of the purchase of the paddlefish was in excess of $350, as evidenced by the price paid by the defendants to the undercover officers for the paddlefish and paddlefish eggs. The Court finds that the government has properly charged a felony in violation of the Lacey Act.

It should further be noted that "'[f]actual impossibility is not a defense to an inchoate offense' such as conspiracy or attempt." Joiner, 418 F.3d at 870 (quoting United States v. Fleming, 215 F.3d 930, 936 (9th Cir. 2000)). Here, the Indictment charges defendant with the crimes of Conspiracy to violate the Lacey Act in Count One and Lacey Act trafficking in Count Two. The Lacey Act specifically criminalizes an attempted trafficking offense in 16 U.S.C. § 3372(a)(4). The law is clear that it is unnecessary to charge attempt as a separate offense because attempt, as a lesser-included offense, is implied in the charged crime. See, e.g., United States v. Elk-Booth, 822 F. Supp. 2d 1089, 1094 n.2 (D. Mont. 2011) (citing United States v. Resendiz–Ponce, 549 U.S. 102, 110 n.7 (2007); United States v. Dhinsa, 243 F.3d 635, 675 (2d Cir. 2001). As such, even without a violation of Missouri law as set forth in 3 CSR 10-10.728, factual impossibility is no defense to the crimes charged against defendant. When the defendants in this conspiracy purchased the paddlefish and paddlefish eggs, they did not know that the items for sale had been purchased legally in Oklahoma. Therefore, even if there were no technical violation of Missouri law, a jury could reasonably conclude that defendant is guilty of an attempted violation of the Lacey Act, a lesser included offense of the offenses charged in the Indictment.

### 3. Whether the state dealer permit requirement is constitutional

Missouri law requires the issuance of a permit for commercial transactions involving paddlefish. 3 CSR 10-10.728. The fee for a dealer permit is $500 for a state resident and $1,500 for a non-resident. 3 CSR 10-10.728, titled "Roe Fish Dealer Permit", provides in pertinent part:

> *PURPOSE: This rule establishes a permit needed to buy and subsequently sell shovelnose sturgeon, paddlefish, bowfin, or any parts of these species legally taken by commercial methods.*
>
> To buy or possess for the purpose of selling, processing, transporting, or shipping legally-acquired bowfin, paddlefish, or any parts of these species . . . Commercial establishments that buy directly from a holder of a roe fish dealer permit and that sell directly to the general public are excluded from this permit requirement.

6

Defendant contends he complied with 3 CSR 10-10.728 because he operated a "commercial establishment" within the meaning of the law as set forth above. Defendant operates a business in New Jersey, which in part purchases paddlefish eggs for the purpose of resale to the general public. As a result, defendant contends, he was not required to obtain a roe fish dealer license. (Doc. 66 at 5-6). Defendant's argument fails because the law further requires that commercial establishments are excluded from the permit requirement only if they "…buy directly from the holder of a roe fish dealer permit." 3 CSR 10-10.728. Here, defendant concedes that neither he nor the undercover officers had a roe fish dealer permit. The defendants did not buy the paddlefish and paddlefish eggs from the holder of a dealer permit and, therefore, were not in compliance with the requirements of the regulation. Indeed, the government advises that the evidence at trial will reveal that the defendants bought the paddlefish out of the back of a pickup truck from a man who they believed was acquiring the paddlefish and paddlefish eggs illegally from poachers. It is therefore clear that the defendants were required to obtain a dealer permit from state licensing authorities, and that their failure to do so was in violation of Missouri law.

a. <u>Dormant Commerce Clause argument</u>

Defendant goes on to argue that 3 CSR 10-10.728 is unconstitutional because it violates the dormant Commerce Clause of the United States Constitution. The Commerce Clause states that "Congress shall have the Power . . . to regulate Commerce . . . among the several states." U.S. CONST. art. I, § 8. "The Supreme Court has also recognized a 'dormant' component to the Commerce Clause: in the absence of express regulation from Congress, the clause acts as a limitation on a state's power to discriminate against interstate commerce." <u>Waste Sys. Corp. v. County of Martin</u>, 985 F.2d 1381, 1385 (8th Cir. 1993) (citing <u>Hughes v. Oklahoma</u>, 441 U.S. 322, 326 (1979)).

Defendant asserts that because the State of Missouri charges non-residents $1,500 for a roe fish dealer permit and only charges residents of the state $500, it discriminates against non-residents and thus against interstate commerce. The Court agrees with the government that defendant's argument is not well-founded. The argument is invalid because of the language of the Commerce Clause that reads, "…in the absence of express regulation from Congress". Congress resolved the issue defendant raises in his argument by stating:

7

> (1) IN GENERAL. It is in the public interest for each State to continue to regulate the taking **for any purpose** of fish and wildlife within its boundaries, including by means of laws or regulations that differentiate between residents and non-residents of such State with respect to . . . the fees charged in connection with issuance of licenses or permits for hunting and fishing.
>
> (2) CONSTRUCTION OF CONGRESSIONAL SILENCE. Silence on the part of Congress shall not be construed to impose any barrier under Clause 3 of Section 8 of Article I of the Constitution (commonly referred to as the "commerce clause") to the regulation of hunting or fishing by a State or Indian tribe.

Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, Pub. L. No. 109-13, 119 Stat. 231, 289, § 6036(b) (2005), quoted in Minnesota v. Hoeven, 456 F.3d 826, 831 (8th Cir. 2006) (emphasis added).

In the Hoeven decision, the Eighth Circuit considered a dormant Commerce Clause challenge to North Dakota regulations which drastically limited the issuance of hunting licenses to non-residents. See Hoeven, 456 F.3d at 828. The Court in Hoeven found that the dormant Commerce Clause claim was moot because, "when Congress acted to confirm the rights of states to regulate these activities, [the Plaintiff's] claim ended." Id. at 832 (quoting Schutz v. Thorne, 415 F.3d 1128, 1138 (10th Cir. 2005)).

Defendant further contends that § 6036(b) above does not preserve the validity of Missouri's regulation. This contention also falls short. The plain language of the statute clearly grants authority for states to regulate the taking of wildlife "for any purpose." This broad language was obviously intended to include the regulation of commercial fishing as well as sport fishing. See, e.g., Marilley v. McCamman, 2011 WL 4595198, *2-3 (N.D. Cal. 2011) (unpublished) (rejecting dormant Commerce Clause challenge to differential commercial fishing license fees because § 6036 "expressly affirms California's authority 'to regulate the taking *for any purpose*' of fish and wildlife" (original emphasis)). The Court agrees with the government that § 6036(b) clearly authorizes Missouri to regulate the taking and sale of paddlefish in a manner that includes higher non-resident dealer permit fees.

The burden imposed by 3 CSR 10-10.728 upon non-resident purchasers of paddlefish and paddlefish eggs is small. Out-of-state commercial establishments that re-

8

sell their eggs directly to the general public are excused from the dealer permit requirement if they purchase their paddlefish and paddlefish eggs from a permitted dealer. 3 CSR 10-10.728. This is true regardless of the commercial establishment's state of residence. Defendant could have avoided the dealer permit fee altogether if he had purchased paddlefish from a permitted dealer. However, the government contends "defendant was only interested in buying as many paddlefish as he could at the lowest possible price — including paddlefish that were harvested illegally after the season had closed." This is not the type of interstate commerce that the dormant Commerce Clause protects.

It is also persuasive to the Court that the State of Missouri's interest in charging a higher fee, $1,500, is legitimate. Tax revenues and fees imposed on state residents for the protection of species such as paddlefish and the shovelnose sturgeon, including the funding of law enforcement authorities to enforce the laws, are financial burdens which are not imposed on non-residents. This legitimate public interest is sufficient to justify differential fish and wildlife license fees. See, e.g., Schutz, 415 F.3d at 1137 (citing Baldwin v. Fish and Game Comm'n of Montana, 436 U.S. 371, 389-90 (1978)). The dormant Commerce Clause challenge is further weakened by the express language of 3 CSR 10-10.728, which states that non-resident commercial establishments can avoid the $1,500 fee altogether if they make their purchases from a dealer who holds a roe fish dealer permit.

Due to the express language of Congress as set forth in § 6036(b) and Missouri's legitimate public interest in charging higher fees for dealer permits for non-residents, 3 CSR 10-10.728 does not violate the dormant Commerce Clause.

        b. <u>Privileges and Immunities Clause argument</u>

The Privileges and Immunities Clause provides that "[t]he citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2. The Privilege and Immunities Clause prohibits any state from impeding "an individual's right to travel from State to State to pursue a livelihood." Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 95 (2d. Cir. 2003) citing Supreme Court of Va. v. Friedman, 487 U.S. 59 (1988) (invalidating residency requirement for state bar membership); Supreme Court of N.H. v. Piper, 470 U.S. 274 (1985) (same); Mullaney v. Anderson, 342 U.S. 415 (1952) (invalidating differential commercial fishing license fee which charged non-residents ten times the amount

that residents paid); Toomer v. Witsell, 334 U.S. 385 (1948) (invalidating differential commercial fishing license fee which charged non-residents one hundred times the amount that residents paid).

Defendant asserts that 3 CSR 10-10.728 is unconstitutional because it "impinges on [a nonresident's] ability to pursue a chosen occupation" in violation of the Privileges and Immunities Clause. (Doc. 63, p.7). When considering a Privileges and Immunities Clause challenge, a Court must consider two factors: "(1) whether a State has, in fact, discriminated against out-of-staters with regard to the privileges and immunities it accords its own citizens, and (2) if so, whether there is a sufficient justification for the discrimination." Crotty, 346 F.3d at 94 (citing United Bldg. & Constr. Trades Council v. Mayor & Council of Camden, 465 U.S. 208, 218, 222 (1984)).

Here, 3 CSR 10-10.728 does not discriminate against non-resident commercial businesses. Defendant claims to be a non-resident commercial dealer. Under this Missouri statute, non-residents are not even required to purchase the $1,500 dealer permit, as long as they purchase fish from an individual or business that has a dealer permit. Defendant's argument is not persuasive in this regard.

In addition, sufficient justification exists for the state to charge an increased amount to non-resident dealers and thus avoid a successful Privileges and Immunities challenge. Sufficient justification is shown when a state demonstrates "(a) a substantial reason for the discrimination, and (b) a reasonable relationship between the degree of discrimination exacted and the danger sought to be averted by enactment of the discriminatory statute." Crotty, 346 F.3d at 94 (citing United Bldg. & Constr. Trades Council, 465 U.S. at 222; see also, Toomer, 334 U.S. at 396)). When analyzing this type of claim the Court must consider whether there is a less restrictive means to accomplish the state's interest as opposed to the effect of the alleged discrimination. Crotty, 346 F.3d at 94 (citing Piper, 470 U.S. at 284)).

The discrimination against non-residents at issue, that is, charging a non-resident dealer an amount three times the rate of a resident dealer, is based upon a legitimate and substantial reason. Non-residents are not subject to Missouri taxes and, accordingly, do not contribute financially to MDC's conservation and law enforcement efforts—including efforts to maintain the viability of protected species of fish like the paddlefish and shovelnose sturgeon. It cannot be seriously contended that the additional $1,000 charged to non-residents is unfair in light of the

tax burden imposed upon residents of Missouri to fund and enforce these legitimate conservation measures. Further, by not requiring non-resident commercial dealers to purchase dealer permits as long as they make their purchases from an individual or dealer who holds a valid roe fish dealer permit, the state has imposed the additional $1,000 requirement for non-residents in the least restrictive manner.

The Court concludes that 3 CSR 10-10.728 does not discriminate against non-residents. Any arguable discriminatory burden is reasonably related to the valid public interests of the State of Missouri in wildlife conservation and enforcement of the conservation laws. Consequently, the Court concludes 3 CSR 10-10.728 does not violate the Privileges and Immunities Clause.

### 4. **Defendant's motion to suppress GPS tracker evidence**

Defendant next urges the Court to suppress all evidence "related to and flowing from" the GPS tracker placed on his vehicle because he was not given timely notice of the search warrant which authorized the tracker's placement. (Doc. 63, p.10-14). The government responds that it did not obtain any relevant evidence from the GPS tracker that was placed on defendant's vehicle. Further, the government concedes that it inadvertently violated the statutory notice requirements because of miscommunication between the United States Attorneys' Offices in the Western District of Missouri and New Jersey.

Because the government did not obtain any evidence from the use of the GPS tracker since the device was not functioning correctly when it was on defendant's vehicle, there is no evidence to suppress. The Court does not believe the government's failure to timely notify defendant was intentional. The Court further does not believe, and defendant has not adequately demonstrated, the failure of the government to timely notify has prejudiced defendant. As a result, defendant's motion to suppress the GPS tracker evidence will be denied as moot.

### B. **Defendant's Motion to Dismiss for Insufficiency of Indictment and Breach of Fifth Amendment Rights (Doc. 73)**

### 1. **Sufficiency of the Indictment**

In defendant's second motion to dismiss the indictment (doc. 73), he urges the Court to dismiss the Indictment because he believes it does not sufficiently set forth the specific Missouri regulations relied on by the government to form the basis for a Lacey Act violation. Defendant contends these regulations are essential elements of the two felonies charged in the Indictment.

The Eighth Circuit has set the following standard of review regarding a motion to dismiss based upon the sufficiency of an indictment:

> An indictment adequately states an offense if "it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."

United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008) (quoting United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002)). An indictment is normally sufficient if its language tracks the statutory language. Hamling v. United States, 418 U.S. 87, 117 (1974).

Federal Rule of Criminal Procedure 7(c), which governs the "Nature and Contents" of indictments, provides as follows:

> **(1) In General.** The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government . . . A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.
>
> **(2) Citation Error.** Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction.

Count One of the Indictment charges defendant with Conspiracy to commit Lacey Act trafficking in violation of 18 U.S.C. § 371. The essential elements of the conspiracy crime charged in Count One are:

> (1) Defendant and Bogdan Nahapetyan reached an agreement to commit the crime of Lacey Act trafficking;
>
> (2) Defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;
>
> (3) At the time Defendant joined in the agreement, Defendant knew the purpose of the agreement; and
>
> (4) While the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

18 U.S.C. § 371; MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE EIGHTH CIRCUIT, Instruction No. 5.06A-I (2013). The Indictment alleges four "manners and means" describing the course of the conspirators' conduct. The Indictment further alleges the commission of nineteen overt acts in furtherance of the charged conspiracy.

Count Two of the Indictment charges defendant with Lacey Act trafficking in violation of 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), and 18 U.S.C. § 2. The essential elements of the Lacey Act trafficking crime charged in Count Two are:

> (1) Defendant knew that the fish had been possessed or sold in violation of, or in a manner unlawful under, Missouri law;
>
> (2) The market value of the fish exceeded $350; and
>
> (3) Defendant transported the fish by knowingly engaging in conduct that involved its sale or purchase, the offer to sell or purchase it, or the intent to sell or purchase it.

16 U.S.C. § 3372(a)(2)(A), 3373(d)(1)(B); MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT, Instruction No. 9.12 (2010).

A review of the Indictment reveals that it sets forth each of the essential elements in both counts, consistent with the applicable statutes and elements of the offenses as described in the applicable jury instructions. Defendant does not appear to be contending the charges in Counts One and Two are deficient because they lack the required statutory elements of the crimes. Rather, defendant argues that Indictment is deficient because it fails to cite particular Missouri regulations (CSR), which he believes should have been included. Defendant suggests the Indictment should be dismissed because of the government's failure to include the specific regulations in the charges. The Court disagrees.

The Eighth Circuit has repeatedly held that constitutional sufficiency does not rest on whether the indictment uses specific words or alleges every possible way in which defendant may have committed the crimes charged. United States v. Redzic, 627 F.3d 683, 689 (8th Cir. 2010); United States v. Henderson, 416 F.3d 686, 693 (8th Cir. 2005). The fundamental inquiry is whether the indictment sufficiently apprises defendant "'of the charges he would be required to defend against,' allowing him "'to effectively prepare for trial.'" United States v. Diaz-Diaz, 135 F.3d 572, 576-77 (8th Cir. 1998) (quoting United States v. Klaphake, 64 F.3d 660, 675 (8th Cir. 1995)).

13

Defendant has not demonstrated that he has been inadequately apprised of the charges. Nor has he demonstrated that the failure of the grand jury to set forth each and every State of Missouri regulation that might be relevant to the facts of this case has prejudiced him in any manner. To the contrary, defendant's pleadings reflect that he is fully aware of the charges against him and how to defend against them if he decides to go to trial. Clearly, the Indictment, as it presently stands, fully and fairly sets forth the essential elements of each offense charged and alleges sufficient information to allow defendant to plead a conviction or acquittal as a bar to subsequent prosecution. The Court finds the Indictment meets all of the essential requirements of an indictment as provided by Rule 7(c) of the Federal Rules of Criminal Procedure and relevant case authority.

### 2. **Defendant's Fifth Amendment Claim**

Defendant's final claim is that the Indictment should be dismissed because the government did not present sufficient evidence to the grand jury to support the charges in the Indictment. Defendant's claim is without merit as it is impermissible to challenge an indictment by a grand jury on the ground that it is based on inadequate and incomplete evidence. United States v. Calandra, 414 U.S. 338, 345 (1974); United States v. Vincent, 901 F.2d 97, 99 (8th Cir. 1990). In Costello v. United States, 350 U.S. 359, 363 (1956), the Supreme Court held that such challenges would allow defendants to "insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment." Rather, "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." Id.; see also United States v. Ferro, 252 F.3d 964, 967-68 (holding that so long as an indictment contains a facially sufficient allegation of the essential elements, the criminal procedure rules do not "provide for a pre-trial determination of sufficiency of the evidence") (quoting United States v. Critzer, 951 F.2d 306, 307-08 (11th Cir. 1992)).

Here, the government submitted evidence regarding the essential elements of the crimes charged to the grand jury, and the grand jury returned an Indictment that is valid on its face and sufficient to call for a trial on the merits. Contrary to defendant's argument, the government is not required to argue its entire theory before the grand jury; nor is it required to provide exculpatory evidence, or enunciate defendant's defense to the crimes alleged. United States v. Williams, 504 U.S. 36, 54 (1992).

### III. Conclusion

The Indictment in the instant case contains a plain, concise and definite statement of the essential facts and elements that constitute the charges in Counts One and Two. The Indictment sufficiently advises defendant of the charges to enable him to prepare for trial and defend at trial. Defendant has not demonstrated that he has been prejudiced by the Indictment's failure to include all of the Missouri regulations which may be applicable to facts of this case. Finally, the Court agrees with the government that defendant is not entitled to a "summary judgment" because the Federal Rules of Criminal Procedure simply do not provide for such a remedy. The charges in the Indictment are sufficient and defendant's motions to dismiss should be denied.

IT IS THEREFORE, RECOMMENDED that the Motion to (1) Dismiss Indictment and (2) for Suppression of Evidence if the Indictment is not Dismissed (doc. 63) be DENIED. Specifically, that the motion (1) to dismiss Indictment be DENIED and the motion (2) for suppression of evidence be DENIED as MOOT. It is further

RECOMMENDED that the Motion to Dismiss Indictment on Grounds of Insufficiency of the Indictment and Breach of Fifth Amendment Rights (doc. 73) be DENIED.

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 24th day of June, 2014, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge